# EXHIBIT A

**SUMMONS - CIVIL**
JD-CV-1 Rev. 6-11
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259, P.B. Secs. 3-1 through 3-21, 8-1

STATE OF CONNECTICUT
**SUPERIOR COURT**
*www.jud.ct.gov*

**See page 2 for instructions**

☐ "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500.
☒ "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more.
☐ "X" if claiming other relief in addition to or in lieu of money or damages.

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code) (C.G.S. §§ 51-346, 51-350)* | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* |
|---|---|---|
| 95 Washington Street, Hartford 06106 | (860) 548-2700 | September 11, 2012 (Month Day Year) |

| ☒ Judicial District ☐ Housing Session ☐ G.A. Number: | At *(Town in which writ is returnable) (C.G.S. §§ 51-346, 51-349)* | Case type code *(See list on page 2)* |
|---|---|---|
| | Hartford | Major: T Minor: 90 |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| Bennett & Walsh, PO Box 106, 103 Main Street, Ansonia, CT 06401 | 003262 |

| Telephone number *(with area code)* | Signature of Plaintiff *(If self-represented)* |
|---|---|
| (203) 735-3321 | |

| Number of Plaintiffs: 2 | Number of Defendants: 6 | ☒ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|
| First Plaintiff | Name: Jones, Brenda as co-administrator of the Estate of John David Hortman<br>Address: 583 Windridge Circle, Inman, South Carolina 29349 | P-01 |
| Additional Plaintiff | Name: Hortman Morris, Jill as co-administrator of the Estate of John David Hortman<br>Address: 12260 Jones Park Court, Colorado Srings, Colorado 80921 | P-02 |
| First Defendant | Name: Goodrich Corporation<br>Address: 2730 West Tyvola Road, Charlotte, Nort Carolina 28217 | D-50 |
| Additional Defendant | Name: Goodrich Pump & Engine Control Systems, Inc.<br>Address: 1 Charter Oak Boulevard, West Hartford, Connecticut 06110-1328 | D-51 |
| Additional Defendant | Name: Rollys-Royce North America, Inc.<br>Address: 1875 Explorer Street, Suite 200, Reston, Virginia 20190 | D-52 |
| Additional Defendant | Name: Rolls-Royce Corporation<br>Address: 2001 S. Tibbs Avenue, Mail Drop U27, Indianapolia, Indiana 46241 | D-53 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. **The Clerk of Court is not allowed to give advice on legal questions.**

| Signed *(Sign and "X" proper box)* | | Name of Person Signing at Left | Date signed |
|---|---|---|---|
| [signature] | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | James W. Walsh | 08/08/2012 |

If this Summons is signed by a Clerk:
a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts.
b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law.
c. The Clerk is not permitted to give any legal advice in connection with any lawsuit.
d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint.

*For Court Use Only*
File Date

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date |
|---|---|---|
| | | 08/08/2012 |

Name and address of person recognized to prosecute in the amount of $250
John Walsh, 103 Main Street, Derby, CT 06418

| Signed *(Official taking recognizance; "X" proper box)* | | Date | Docket Number |
|---|---|---|---|
| [signature] | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | 01/20/2012 | |

(Page 1 of 2)

Print Form Reset Form

**CIVIL SUMMONS**
CONTINUATION OF PARTIES

JD-CV-2   Rev. 4-97

STATE OF CONNECTICUT
**SUPERIOR COURT**

FIRST NAMED PLAINTIFF (Last, First, Middle Initial)
**Jones, Brenda, a co-administrator**

FIRST NAMED DEFENDANT (Last, First, Middle Initial)
**Goodrich Corporation**

## ADDITIONAL PLAINTIFFS

| NAME (Last, First, Middle Initial, if individual) | ADDRESS (No., Street, Town and ZIP Code) | CODE |
|---|---|---|
| | | 03 |
| | | 04 |
| | | 05 |
| | | 06 |
| | | 07 |
| | | 08 |
| | | 09 |
| | | 10 |
| | | 11 |
| | | 12 |
| | | 13 |

## ADDITIONAL DEFENDANTS

| NAME (Last, First, Middle Initial, if individual) | ADDRESS (No., Street, Town and ZIP Code) | CODE |
|---|---|---|
| The Boeing Company<br>100 North Riverside Place, Chicago, Illinois 60606 | | 54 |
| MD Helicopters, Inc.<br>4555 East McDowell Road, Mesa, Arizona 85219-9734 | | 55 |
| | | 56 |
| | | 57 |
| | | 58 |
| | | 59 |
| | | 60 |

| | CODE | FOR COURT USE ONLY - FILE DATE |
|---|---|---|
| | 61 | |
| | 62 | |
| | 63 | DOCKET NO. |

CIVIL SUMMONS-Continuation

| | | |
|---|---|---|
| RETURN DATE: SEPTEMBER 11, 2012 | : | SUPERIOR COURT |
| BRENDA JONES, AS | : | JUDICIAL DISTRICT OF |
| CO-ADMINISTRATOR OF | : | HARTFORD |
| THE ESTATE OF | : | |
| JOHN DAVID HORTMAN, | : | AT HARTFORD |
| ET AL. | : | |
| | : | |
| vs. | : | |
| | : | |
| GOODRICH CORPORATION, ET AL. | : | AUGUST 8, 2012 |

## **COMPLAINT**

### THE PARTIES

1.     Plaintiff Brenda Jones is an individual, a citizen and resident of the State ·of South Carolina, the mother of Captain John David Hortman, U.S. Army, deceased, and the co-administrator of his estate.

2.     Plaintiff Jill Hortman Morris is an individual, a citizen and resident of the State of Colorado, the sister of Captain John David Hortman, U.S. Army, deceased, and the co-administrator of his estate.

3.     Defendant Goodrich Corporation is a corporation, organized and existing under the laws of the State of New York, with its principal place of business in Charlotte, North Carolina and at all times material hereto was the designer, manufacturer, tester, seller, supplier and systems integrator of the commercially available Fully Automated Digital Electronic Control ("FADEC") model EMC-35 that is installed in and on the Model 250 turbine engine.

4.     Defendant Goodrich Pump and Engine Control Systems, Inc. is a corporation, organized and existing under the laws of the State of Delaware, with its principal place of business in West Hartford, Connecticut and at all times material hereto

was the designer, manufacturer, tester, seller, supplier and systems integrator of the commercially available EMC-35 FADEC that is installed in and on the Model 250 turbine engine. Upon information and belief, defendant Goodrich Pump and Engine Control Systems, Inc. operates as a subsidiary of defendant Goodrich Corporation but under the direct operational control of its parent company.

5.     Together and collectively, defendant Goodrich Corporation and defendant Goodrich Pump and Engine Control Systems, Inc., are referred to herein as the "FADEC defendants."

6.     Defendant Rolls-Royce North America, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Reston, Virginia and at all times material hereto was the designer, manufacturer, tester, seller, supplier and systems integrator for the Model 250 turbine engine and/or was the purchaser of or otherwise successor-in-interest to the designer, manufacturer, seller, tester, supplier and systems integrator for the Model 250 turbine engine installed in and on the AH-6M "Little Bird" helicopter and multiple other civilian and military helicopters.

7.     Defendant Allison Engine Company, Inc. a/k/a Allison Engine Company (collectively "Allison") a/k/a Rolls-Royce Corporation is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Indianapolis, Indiana and at all times material hereto was the designer, manufacturer, tester, seller, supplier and systems integrator for the Allison Model 250 turbine engine a/k/a the Rolls-Royce Model 250 turbine engine and/or the purchaser of or otherwise successor-in-interest to the designer, manufacturer, seller, tester, supplier and systems

integrator for the Model 250 turbine engine, installed in and on the AH-6M "Little Bird" helicopter and multiple other civilian and military helicopters.  Upon information and belief, defendant Rolls-Royce Corporation and/or defendant Rolls-Royce North America, Inc. acquired defendant Allison in or about the year 1995.

8.     Together and collectively, defendant Rolls-Royce North America, Inc. and defendant Rolls-Royce Corporation are referred to herein as the "engine defendants."

9.     Defendant Boeing Company is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Chicago, Illinois and at all times material hereto was the designer, manufacturer, tester, seller, supplier and systems integrator for the AH-6M "Little Bird" helicopter and/or was the purchaser or otherwise successor-in-interest to the designer, manufacturer, tester, seller, supplier and systems integrator for the AH-6M "Little Bird" helicopter and other commercially available helicopters that share the same or similar design.

10.     Defendant MD Helicopters, Inc. is a corporation organized and existing under the laws of the State of Arizona with its principal place of business in Mesa, Arizona and at all times material hereto was the designer, manufacturer, tester, seller, supplier and systems integrator for the AH-6M "Little Bird" helicopter or was the purchaser of or otherwise successor-in-interest to the designer, manufacturer, tester, seller, supplier and systems integrator for the AH-6M "Little Bird" helicopter and other commercially available helicopters that share the same or similar design.

11.     Together and collectively, defendant Boeing Company and defendant MD Helicopters, Inc. are referred to herein as the "helicopter defendants."

BACKGROUND OF THIS LAWSUIT

12.   The AH-6M "Little Bird" is a helicopter designed, tested and supplied to the U.S. Army substantially based upon the design and testing of a pre-existing, commercially available civilian helicopter, certified by the Federal Aviation Administration ("FAA") for civilian flight.

13.   The helicopter defendants were and are charged with supplying the Little Bird helicopter, its engine and other components for use in the aircraft that meet the government's performance requirements as well as safety and reliability standards.

14.   The design and manufacture of the Little Bird helicopter were and are defective and unreasonably dangerous because the aircraft is not capable of safe flight throughout the entire operating envelope for which it was supplied, nor does it meet the performance requirements of the U.S. Army, nor does it meet the required manufacturing and quality control standards.

15.   The design and manufacture of the Little Bird helicopter were and are defective and unreasonably dangerous because the aircraft is not crashworthy and, in the event of a malfunction and impact with terrain, the aircraft did not and does not provide for survivability of the pilots and other occupants of the aircraft.

16.   The Little Bird helicopter and other commercially available aircraft are powered by the commercially available turbine engine known as a Model 250 engine, which was and is designed, manufactured, tested, sold and supplied by the engine defendants.

17.     Before it was supplied on the Little Bird helicopter, the Model 250 engine was widely available commercially, with over 30,000 engines delivered to customers by the engine defendants.

18.     The engine defendants were and are charged with supplying the Model 250 engine, and its component parts, that meet the government's safety and reliability standards.

19.     The engine defendants' design and manufacture of the Model 250 engine were and are defective and unreasonably dangerous because the engine does not allow for pilot control, fuel delivery, or full rated power throughout the entire operating envelope for which it was certified and supplied.

20.     The Model 250 engine is woefully unreliable as a result of its design that incorporates a single-channel FADEC that does not provide the pilot with sufficient engine power for safe flight in the event of a FADEC failure.

21.     The Model 250 engine does not incorporate an adequate backup system to the single-channel, single point of failure FADEC and the result of the single point of failure with inadequate backup is a loss of engine control that results in grave danger to the helicopter, its crew and passengers.

22.     The Model 250 engine is woefully unreliable as a result of the engine defendants' lack of a coherent quality assurance system and, worse, the engine defendants' outright rejection of quality control standards and their knowing supply of rejected parts to customers.

23.     The engine defendants terminated employees who documented their multiple quality assurance violations regarding the Model 250 engine installed on the

Little Bird aircraft; a whistleblower lawsuit, styled U.S. ex rel. McArtor v. Rolls-Royce Corp., No. 1:08-cv-0133, is ongoing in the United States District Court for the Southern District of Indiana.

24.     The Model 250 engine that was and is installed in the Little Bird helicopter and other commercially available aircraft contains an EMC-35 FADEC, that was and is designed, manufactured, sold and supplied by the FADEC defendants that is supposed to provide the pilot with full engine control throughout the operating envelope of the engine and that is supposed to provide reliable and efficient engine operation.

25.     The FADEC defendants were and are charged with supplying the EMC-35 FADEC, and its component parts, that meet the government's safety and reliability standards.

26.     A FADEC is a digital computer that controls fuel to a turbine engine. The FADEC senses engine parameters and delivers fuel to the engine according to its programming.   A FADEC failure then results in fuel delivery failure, which directly effects the engine power, control and performance.

27.     The defendants' design and manufacture of the EMC-35 FADEC were and are defective and unreasonably dangerous because the FADEC has a single channel, a single point of failure, zero redundancy, woefully poor reliability, and it does not allow the engine on which it is installed to produce full rated power throughout the entire operating envelope for which it was certified and supplied.

28.     The EMC-35 FADEC has experienced numerous problems, and has been upgraded and/or replaced in commercial aircraft; nonetheless, EMC-35 FADEC failures

still occur with frightening frequency, placing military and civilian pilots, as well as helicopter passengers and pedestrians on the ground, in grave danger.

29.     The defendants were aware of the flaws in the helicopter, its engine and its FADEC, yet they did nothing to warn the government about the problems in this equipment, and they did nothing to alert the pilots to the catastrophic failure potential for these components.

30.     Instead, the defendants have concealed high rate of defects in the helicopter, engine and FADEC and have continued to knowingly supply commercial and government customers with components that fail; the defendants knew that the consequences of these failures were and are serious injury and death, including the death of Plaintiffs' decedent John David Hortman.

31.     In addition, the defendants have failed in their duties to provide accurate and reliable troubleshooting information for the Little Bird aircraft and have also failed to provide adequate instructions and warnings for pilots who experience helicopter, engine and/or FADEC failures.

32.     The defendants have failed in their duties to the government, including the FAA and the U.S. Army, to ensure that the equipment that they design, manufacture, test, supply and sell is airworthy and capable of safe flight, which it is not. But worse they have through manufacturing flaws and quality assurance failures provided instead an unreliable, unairworthy and defectively manufactured helicopter, engine, fuel control, FADEC and other components which resulted in the accident subject of this lawsuit.

THIS ACCIDENT

33.     Plaintiffs' decedent John David Hortman ("David Hortman") was an officer in the U.S Army and one of the best helicopter pilots in the country.

34.     David Hortman was a graduate of the United States Military Academy at West Point, a highly decorated combat veteran of the war in Iraq and was qualified to fly the Little Bird helicopter.

35.     On August 8, 2011 an AH-6M "Little Bird" aircraft, tail number 06-25380 (the "accident aircraft") was piloted by Plaintiffs' decedent David Hortman as well as Steven B. Redd.

36.     On August 8, 2011, Steven Redd was the pilot-in-command of the accident aircraft, and David Hortman was the copilot; however, either pilot is capable of controlling the aircraft at any time and both David Hortman and Steven Redd were qualified to be a pilot-in-command.

37.     On August 8, 2011, the accident aircraft was scheduled to be part of a daytime training exercise in Visual Meteorological Conditions ("VMC") at Fort Benning, Georgia.

38.     The accident aircraft was scheduled to provide live aerial fire support of Army ground forces for a training exercise at Fort Benning, Georgia.

39.     Before the training exercise began, the accident aircraft performed a range sweep that ensured that the training area contained suitable training reference points and that the live fire support impact area was clear of personnel and vehicles.

40.     On the afternoon of August 8, 2010 the accident aircraft performed two overflights of the training area at about 100 feet above the highest obstacle, the daytime weather was clear, hot and humid.

41.     After the second overflight of the training area, the pilots of the accident aircraft announced to the flight lead that they needed to land immediately.  The flight lead observed the accident aircraft at 100 feet above the ground and descending in a slight right-hand turn at about 80 knots.  The accident aircraft called flight lead again and announced in a panicked voice "I'm going in."  The accident aircraft was observed hitting the tops of tall trees on the Southwest side of the training area while operating in powered flight and not in an autorotation.  The aircraft impacted at about 30 degrees nose-down.

42.     Plaintiffs' decedent David Hortman was found slumped in his seat in the accident aircraft and was treated by Army medics and civilian ambulance and air ambulance medical personnel.  He was evacuated from the scene of the crash and later died.

43.     The post-crash investigation revealed that the FADEC on the accident aircraft failed to a low fixed fuel setting, which affected the RPM of the accident aircraft's rotors and caused altitude loss.

44.     The post-crash investigation also revealed that the pilots of the accident aircraft performed the prescribed emergency procedures but that the manual backup to the FADEC was not effective in controlling the accident aircraft nor its badly malfunctioning engine.

**Count I – Strict Liability (as to the helicopter defendants)**

1. – 44.  Plaintiffs incorporate by reference paragraphs 1-44.

45.    The defendants are liable to the plaintiffs under the theory of Strict Liability in that:

a.  The AH-6M Little Bird helicopter was defective

b.    The AH-6M Little Bird helicopter was unreasonably dangerous

c.    The AH-6M Little Bird helicopter was in the same condition the day it failed as it was at the time of delivery.

d.    The failure of the AH-6M Little Bird helicopter was the result of manufacturing and/or design defects.

e.    This crash was the result of the failure of the AH-6M Little Bird helicopter to provide the pilots with a reliable engine and means for aircraft propulsion, power, and control.

f.    The death of plaintiffs' decedent David Hortman was the result of the AH-6M Little Bird helicopter not being designed or manufactured to be crashworthy or otherwise allowing for pilot survivability in the event of a crash.

46.    The defects in the AH-6M Little Bird helicopter include but are not limited to the following:

a.    Dangerous and defective design because the AH-6M Little Bird helicopter was prone to failure at a rate that is not consistent with safe flight.

b.      Dangerous and defective manufacture because the AH-6M Little Bird helicopter was prone to failure at a rate that is not consistent with safe flight.

c.      Dangerous and defective systems integration because the known failure modes of the AH-6M Little Bird helicopter were not accounted for and the crew was not protected from a single-point of failure in the helicopter, engine and FADEC components.

d.      Dangerous and defective systems integration that did not allow for an adequate backup system for the engine and FADEC single point of failure with no redundancy.

e.      Dangerous and defective design, manufacture, and/or systems integration that incorporated a dangerous and defective manual backup system to the single FADEC that was did not allow for adequate pilot control of the engine.

f.      Dangerous and defective systems integration that did not allow the pilots to command adequate fuel supply to the engine for safe flight throughout the entire operating envelope of the AH-6M Little Bird helicopter.

g.      Dangerous and defective systems integration of pilot restraint, pilot seating, and other safety systems that did not allow for pilot survivability in the event of a crash.

h.      Dangerous and defective instructions because there was nothing to alert flight crew or maintenance personnel of the impending failures of

the helicopter, engine and FADEC components, which were known only to defendants.

        i.      Dangerous and defective operating instructions, operating limitations, operating procedures and emergency procedures for AH-6M Little Bird helicopters, engines, FADECs and their components.

        j.      Dangerous and defective warnings about engine and FADEC failures.

        k.      Dangerous and defective warnings about crash survivability.

47.     As a direct and/or proximate result of the defects described, David Hortman's aircraft suffered a loss of engine power, loss of engine control, loss of aircraft control, and a crash that took his life.

WHEREFORE, plaintiffs claim money damages.

### Count II – Negligence (as to the helicopter defendants)

1. – 47.  Plaintiffs incorporate paragraphs 1-47 by reference.

48.     The defendants were negligent and that negligence was the direct and/or proximate cause of the death of David Hortman.

49.     The negligence of the defendants consisted of the following:

        a.      Failing to properly design the AH-6M Little Bird helicopter.

        b.      Failing to properly manufacture the AH-6M Little Bird helicopter.

c.    Failing to properly integrate the systems of the AH-6M Little Bird helicopter because the known failure modes of the AH-6M Little Bird helicopter were not accounted for and the crew was not protected from a single-point of failure in the helicopter, engine and FADEC components.

d.    Failing to properly integrate the systems of the AH-6M Little Bird helicopter because they did not allow for an adequate backup system for the engine and FADEC single point of failure with no redundancy.

e.    Failing to properly design, manufacture and/or integrate the systems of the AM-6M Little Bird helicopter by incorporating an adequate backup system to the single FADEC that would allow for adequate pilot control of engine.

f.    Failing to properly integrate the systems of the AH-6M Little Bird helicopter because it did not allow the pilots to command adequate fuel supply to the engine for safe flight throughout the entire operating envelope of the helicopter.

g.    Failing to properly integrate the systems of the AH-6M Little Bird helicopter because the aircraft's pilot restraint, pilot seating, and other safety systems did not allow for pilot survivability in the event of a crash.


h.    Failing to provide proper instructions because there was nothing to alert flight crew or maintenance personnel of the impending failures of the helicopter, engine and FADEC components, which were known only to the defendants.

i.      Failing to provide proper operating instructions, operating limitations, operating procedures and emergency procedures for AH-6M Little Bird helicopters, engines, FADECs and their components.

j.      Failing to provide proper warnings about engine and FADEC failures.

k.      Failing to provide proper warnings about the FADEC's manual backup system.

l.      Failing to provide proper warnings about crash survivability.

m.      Failing to redesign the AH-6M Little Bird helicopter, its engine, FADEC and components to correct defects that were known to defendants, or should have been known to them.

n.      Failing to take all reasonable steps to provide the pilots with redundancy given the known history of engine Model 250 and EMC-35 FADEC defects.

o.      Failing to properly and adequately perform their contracts in good faith the protect those who pilot and fly in the AH-6M Little Bird helicopter.

50.     As a direct and/or proximate result of the negligence of the defendants, David Hortman's aircraft suffered a loss of engine power, loss of engine control, loss of aircraft control, and a crash that took his life.

WHEREFORE, plaintiffs claim money damages.

## Count III – Breach of Warranty (as to helicopter defendants)

1. – 50.  Plaintiffs incorporate paragraphs 1 - 50 by reference.

51.     There existed at the time of this accident certain warranties of fitness for a particular purpose and merchantability that were implied from the sale of the AH-6M Little Bird helicopter to the United States by these defendants regardless of any writing to eliminate them.

52.     The warranty of fitness for a particular purpose was breached by the defendants for the reasons set forth in Counts I and II because the AH-6M Little Bird helicopter was completely and wholly inadequate for the purpose intended, safe flight.

53.     The warranty of merchantability was breached by the defendants because the AH-6M Little Bird helicopter was not of fair or average quality of other helicopters made by competitors nor as it of the same quality as others manufactured by these defendants in that this one failed to function as required.

54.     The warranty of merchantability was breached by these defendants because the AH-6M Little Bird helicopter was not of fair or average quality of other helicopters.

55.     As a direct result of the breaches of warranty by the defendants David Hortman lost his life.

WHEREFORE, plaintiffs claim money damages.

## Count IV – Breach of Contract (as to helicopter defendants)

1. – 55.  Plaintiffs incorporate paragraphs 1-55 by reference.

56.    The United States Government entered into a performance-only contract with the defendants for the supply of a multi-purpose helicopter.

57.    The purpose of that contract was to provide the United States Army with a multi-purpose helicopter that would conduct missions in support of ground troops in combat and in training.

58.    The requirements of the contract were performance-only requirements that did not specify the precise manner of construction.

59.    The design, manufacture, testing and systems integration of the helicopter was the responsibility of the defendants pursuant to the performance-only requirements of the contract.

60.    The entire objective of the contract was to provide an airworthy helicopter for the benefit of the pilots and the ground troops, in this instance David Hortman.

61.    It was the objective, purpose and specific intention of the parties that the beneficiary of the contract was the pilots and the specific objective that they be equipped with an aircraft that would provide, under all anticipatable flight conditions and in combat and in training, sufficient thrust, power, airworthiness and crashworthiness so that the aircraft and the pilots would survive the flight and the fight.

62.    The defendants breached their contract for the creditor beneficiary, David Hortman, by failing to provide an aircraft that met the performance-only requirements of the contract.

63.     The defendants breached their contract for the creditor beneficiary, David Hortman, by failing to meet their obligations as set forth in Counts I-III.

WHEREFORE, plaintiffs claim money damages.

## Count V – Fraud (as to helicopter defendants)

1. – 63.  Plaintiffs incorporate paragraphs 1 - 63 by reference.

64.     The defendants knew, beginning at least in 2007, that the AH-6M Little Bird helicopter was unreasonably dangerous and prone to failure yet they knowingly concealed this information from the government and specifically from the Army.

65.     The defendants knew, by virtue of multiple previous failures of the AH-6M Little Bird helicopter, its engine, FADEC and other components, that the helicopter was unreasonably dangerous and prone to failure yet the defendants knowingly concealed this information from the government and specifically from the Army.

66.     The defendants knew, by virtue of multiple previous failures of Model 250 engines and EMC-35 FADECs installed on other aircraft, that these systems and components were unreasonably dangerous, prone to failure, prone to single-point failure, and required adequate redundancy yet the defendants knowingly concealed this information from the government and specifically from the Army.

67.     The defendants knew, by virtue of multiple previous failures of Model 250 engines and EMC-35 FADECs installed on other aircraft, that the manual backup system for the FADEC was unreasonably dangerous because it did not allow for adequate pilot control of the engine.

68.     In numerous meetings, conversations and communications with the government, and specifically with the Army, the defendants repeatedly failed to disclose the true nature of the flaws of the AH-6M Little Bird helicopter, its engine, FADEC and components and, instead, falsely represented that the helicopter, its engine, FADEC and components would provide sufficient power, thrust, engine control and aircraft control throughout the helicopter's entire operating envelope and that the probability of failure would be remote or highly remote.

69.     The defendants charged the government millions of dollars for a helicopter that could not and did not provide the pilots with the basic needs of safe flight.

70.     The defendants committed actual fraud on the United States Army and therefore its employee David Hortman by knowingly supplying an unreasonably dangerous and defective AH-6M Little Bird helicopter.

71.     The fraud of the defendants included but is not limited to the following by falsely:

a.     Representing that the AH-6M Little Bird helicopter would meet the performance requirements of the contract when these defendants knew the helicopter did not meet those requirements

b.     Representing that the AH-6M Little Bird helicopter met the reliability requirements of the contract when these defendants knew the helicopter did not meet those requirements.

c.      Representing that the AH-6M Little Bird helicopter met the system integration requirements of the contract when these defendants knew the helicopter did not meet those requirements.

d.      Representing that the Model 250 engine and the EMC-35 FADEC would work with the helicopter to provide safe flight when these defendants knew that these components would not work to provide for the helicopter's safe flight.

e.      Representing that they had fixed or cured any defects in the AH-6M Little Bird helicopter when these defendants knew they had not.

f.      Representing that they had performed adequate testing and evaluation of the AH-6M Little Bird helicopter, its engine and FADEC when these defendants knew they had not.

g.      Representing that they had provided sufficient maintenance information to allow diagnostics and repair in the field when these defendants knew they had not.

h.      Representing that they had provided appropriate warnings when these defendants knew they had not.

i.      Representing that they had provided appropriate operating instructions, operating limitations, operating procedures and emergency procedures when these defendants knew they had not.

j.      Representing that they had provided safe and reliable systems that would allow our fighting men and women to survive the fight when these defendants knew they had

k.    Representing that they had properly manufactured the helicopter and all of its operating systems.

l.    Representing that the manual backup system to the single FADEC would allow for adequate control of the engine when these defendants knew it would not.

72.    As a direct result of the fraud and deceit of the defendants, plaintiffs demand punitive damages.

WHEREFORE, plaintiffs claim money damages.

**Count VI – Strict Liability (as to the engine defendants)**

1. – 72.  Plaintiffs incorporate paragraphs 1-72 by reference.

73.    The defendants are liable to the plaintiffs under the theory of Strict Liability in that:

a.    The Model 250 engine was defective

b.    The Model 250 engine was unreasonably dangerous

c.    The Model 250 engine was in the same condition the day it failed as it was at the time of delivery.

d.    The failure of the Model 250 engine was the result of manufacturing and/or design defects.

e.    This crash was the result of the failure of the Model 250 engine to provide the pilots with a reliable engine and means for aircraft propulsion and power.

74.    The defects in the Model 250 engine include but are not limited to the following:

      a.      Dangerous and defective design because the Model 250 engine was prone to failure at a rate that is not consistent with safe flight.

      b.      Dangerous and defective manufacture because the Model 250 engine was prone to failure at a rate that is not consistent with safe flight.

      c.      Dangerous and defective systems integration because the known failure modes of the Model 250 engine were not accounted for and the crew was not protected from a single-point of failure in the engine, its FADEC and its components.

      d.      Dangerous and defective systems integration that did not allow for an adequate backup system for the engine and FADEC single point of failure with no redundancy.

      e.      Dangerous and defective design, manufacture, and/or systems integration that incorporated a dangerous and defective manual backup system to the single FADEC that was not able to allow for adequate pilot control of the engine.

      f.      Dangerous and defective systems integration that did not allow the pilots to command adequate fuel supply to the engine for safe flight throughout the entire operating envelope of the Model 250 engine.

      g.      Dangerous and defective instructions because there was nothing to alert flight crew or maintenance personnel of the impending failures of the Model 250 engine, its FADEC and its components, which were known only to defendants.

h.    Dangerous and defective operating instructions, operating limitations, operating procedures and emergency procedures for Model 250 engine, its FADEC and its components.

i.    Dangerous and defective warnings about engine and FADEC failures.

75.   As a direct and/or proximate result of the defects described, David Hortman's aircraft suffered a loss of engine power, a loss of engine control and a crash that took his life.

WHEREFORE, plaintiffs claim money damages.

### Count VII – Negligence (as to the engine defendants)

1. – 75.  Plaintiffs incorporate paragraphs 1-75 by reference.

76.   The defendants were negligent and that negligence was the direct and/or proximate cause of the death of David Hortman.

77.   The negligence of the defendants consisted of the following:

a.    Failing to properly design the Model 250 engine.

b.    Failing to properly manufacture the Model 250 engine.

c.    Failing to properly implement a quality control system that ensured that engines with manufacturing defects were not supplied to the customer.

d.    Failing to properly follow established government and industry standards for quality control systems.

e.      Failing to properly design, manufacture and/or integrate the manual backup to the single FADEC that was allowed for adequate pilot control of the engine.

f.      Failing to properly remove defective components from the engines that it supplied.

g.      Failing to properly integrate the systems of the Model 250 engine because the known failure modes of the Model 250 engine were not accounted for and the crew was not protected from a single-point of failure in the engine, its FADEC and its components.

h.      Failing to properly integrate the systems of the Model 250 engine because they did not allow for an appropriate backup system for the engine and FADEC single point of failure with no redundancy.

i.      Failing to properly integrate the systems of the Model 250 engine because the engine did not allow the pilots to command an adequate fuel supply for safe flight throughout the entire operating envelope of the engine.

j.      Failing to provide proper instructions because there was nothing to alert flight crew or maintenance personnel of the impending failures of the Model 250 engine, its FADEC and its components, which were known only to defendants.

k.      Failing to provide proper operating instructions, operating limitations, operating procedures and emergency procedures for the Model 250 engine, its FADECs and its components.

l.      Failing to provide proper warnings about engine and FADEC failures.

m.      Failing to redesign the Model 250 engine, its FADEC and its components to correct defects that were known to defendants, or should have been known to them.

n.      Failing to take all reasonable steps to provide the pilots with redundancy given the known history of engine Model 250 and EMC-35 FADEC defects.

o.      Failing to properly and adequately perform their contracts in good faith the protect those who pilot and fly in aircraft with the Model 250 engine.

78.    As a direct and/or proximate result of the negligence of the defendants, David Hortman's aircraft suffered a loss of engine power, loss of engine control, and a crash that took his life.

WHEREFORE, plaintiffs claim money damages.

### Count VIII – Breach of Warranty (as to engine defendants)

1. – 78. Plaintiffs incorporate paragraphs 1-78 by reference.

79.    There existed at the time of this accident certain warranties of fitness for a particular purpose and merchantability that were implied from the sale of the Model 250 engine to the United States by these defendants regardless of any writing to eliminate them.

80.    The warranty of fitness for a particular purpose was breached by the defendants for the reasons set forth in Counts VI and VII because the Model 250 engine was completely and wholly inadequate for the purpose intended, safe flight.

81.    The warranty of merchantability was breached by the defendants because the Model 250 engine was not of fair or average quality of other engines made by competitors nor as it of the same quality as others manufactured by these defendants in that this one failed to function as required.

82.    The warranty of merchantability was breached by these defendants because the Model 250 engine was not of fair or average quality of other engines.

83.    As a direct result of the breaches of warranty by the defendants David Hortman lost his life.

WHEREFORE, plaintiffs claim money damages.

### Count IX – Breach of Contract (as to engine defendants)

1. – 83.  Plaintiffs incorporate paragraphs 1-83 by reference.

84.    The United States Government entered into a performance-only contract with the defendants for the supply of a turbine engine to power the AH-6M Little Bird helicopter.

85.    The purpose of that contract was to provide the United States Army with an engine that would provide power throughout the entire operating envelope of the aircraft.

86.    The requirements of the contract were performance-only requirements that did not specify the precise manner of construction.

87.   The design, manufacture, testing and systems integration of the engine was the responsibility of the defendants pursuant to the performance-only requirements of the contract.

88.   The entire objective of the contract was to provide an airworthy engine for the benefit of the pilots, in this instance David Hortman.

89.   It was the objective, purpose and specific intention of the parties that the beneficiary of the contract was the pilots and the specific objective that they be equipped with an engine that would provide, under all anticipatable flight conditions and in combat and in training, sufficient power and airworthiness so that the aircraft and the pilots would survive the flight and the fight.

90.   The defendants breached their contract for the creditor beneficiary, David Hortman, by failing to provide an engine that met the performance-only requirements of the contract.

91.   The defendants breached their contract for the creditor beneficiary, David Hortman, by failing to meet their obligations as set forth in Counts VI to VIII.

WHEREFORE, plaintiffs claim money damages.

### Count X – Fraud (as to engine defendants)

1. – 91.  Plaintiffs incorporate paragraphs 1-91 by reference.

92.   The defendants knew, beginning at least in 2007, that the Model 250 engine was unreasonably dangerous and prone to failure yet they knowingly concealed this information from the government and specifically from the Army.

93.   The defendants knew, by virtue of multiple previous failures of the Model 250 engine, its FADEC and other components, that the engine was unreasonably

dangerous and prone to failure yet the defendants knowingly concealed this information from the government and specifically from the Army.

94.    The defendants knew, by virtue of multiple previous failures of Model 250 engines and EMC-35 FADECs installed on other aircraft, that these systems and components were unreasonably dangerous, prone to failure, prone to single-point failure, and required adequate redundancy yet the defendants knowingly concealed this information from the government and specifically from the Army.

95.    The defendants knew, by virtue of multiple previous failures of Model 250 engines and EMC-35 FADECs installed on other aircraft, that the manual backup system for the FADEC was unreasonably dangerous because it did not allow for adequate pilot control of the engine.

96.    In numerous meetings, conversations and communications with the government, and specifically with the Army, the defendants repeatedly failed to disclose the true nature of the flaws of the Model 250 engine, its FADEC and components and, instead, falsely represented that the engine, its FADEC and components would provide sufficient power, thrust, engine control and aircraft control throughout the helicopter's entire operating envelope and that the probability of failure would be remote or highly remote.

97.    The defendants charged the government millions of dollars for an engine that could not and did not provide the pilots with the basic needs of safe flight.

98.    In numerous meetings, conversations, and communications with their own employees, these defendants knew that the Model 250 engine, its FADEC and its components did not pass quality control standards, yet they knowingly concealed this

information from the government and instead falsely represented that the Model 250 engine, its FADEC and its components passed quality control standards.

99.     In numerous meetings, conversations and communications with their own employees, these defendants knew that the Model 250 engine, its FADEC and its components did not meet government manufacturing specifications, yet they knowingly concealed this information from the government and instead falsely represented that that the Model 250 engine, its FADEC and its components met government manufacturing specifications.

100.    In numerous meetings, conversations and communications with their own employees, these defendants knew that the Model 250 engine, its FADEC and its components did not meet government performance specifications, yet they knowingly concealed this information from the government and instead falsely represented that that the Model 250 engine, its FADEC and its components met government performance specifications.

101.    The defendants committed actual fraud on the United States Army and therefore its employee David Hortman by knowingly supplying an unreasonably dangerous and defective Model 250 engine.

102.    The fraud of the defendants included but is not limited to the following by falsely:

    a.      Representing that the Model 250 engine would meet the performance requirements of the contract when these defendants knew the engine did not meet those requirements

b.      Representing that the Model 250 engine met the reliability requirements of the contract when these defendants knew the engine did not meet those requirements.

c.      Representing that the Model 250 engine met the system integration requirements of the contract when these defendants knew the engine did not meet those requirements.

d.      Representing that the Model 250 engine and the EMC-35 FADEC would work to provide safe flight throughout the anticipated operating envelope when these defendants knew that these components would not work to provide for the safe flight.

e.      Representing that they had fixed or cured any defects in the Model 250 engine when these defendants knew they had not.

f.      Representing that they had performed adequate testing and evaluation of the Model 250 engine and its FADEC when these defendants knew they had not.

g.      Representing that they had provided sufficient maintenance information to allow diagnostics and repair in the field when these defendants knew they had not.

h.      Representing that they had provided appropriate warnings when these defendants knew they had not.

i.      Representing that they had provided appropriate operating instructions, operating limitations, operating procedures and emergency procedures when these defendants knew they had not.

j.      Representing that they had provided safe and reliable systems that would allow our fighting men and women to survive the fight when these defendants knew they had not.

k.      Representing that they had in place an adequate and acceptable quality control system for the engine, its FADEC and its components when these defendants knew they had not.

l.      Representing that the engines, FADECs, and components that were supplied to the government met quality control standards when these defendants knew they did not.

m.      Representing that the engines, FADECs, and components that were supplied to the government were free from manufacturing defects when these defendants knew they were not.

n.      Representing that the engines, FADECs and components that were supplied to the government conformed to government specifications when these defendants knew they did not.

o.      Representing that the manual backup system to the single FADEC would allow for adequate control of the engine when these defendants knew it would not

103.    As a direct result of the fraud and deceit of the defendants, plaintiffs demand punitive damages.

WHEREFORE, plaintiffs claim money damages.

**Count XI – Strict Liability (as to the FADEC defendants)**

1. – 103.  Plaintiffs incorporate paragraphs 1-103 by reference.

104.  The defendants are liable to the plaintiffs under the theory of Strict Liability in that:

   a.  The EMC-35 FADEC was defective

   b.  The EMC-35 FADEC was unreasonably dangerous

   c.  The EMC-35 FADEC was in the same condition the day it failed as it was at the time of delivery.

   d.  The failure of the EMC-35 FADEC was the result of manufacturing and/or design defects.

   e.  This crash was the result of the failure of the EMC-35 FADEC to provide the engine and therefore the pilots with a reliable means for fuel delivery and therefore aircraft propulsion and power.

105.  The defects in the EMC-35 FADEC include but are not limited to the following:

   a.  Dangerous and defective design because the EMC-35 FADEC was prone to failure at a rate that is not consistent with safe flight.

   b.  Dangerous and defective manufacture because the EMC-35 FADEC was prone to failure at a rate that is not consistent with safe flight.

   c.  Dangerous and defective systems integration because the known failure modes of the EMC-35 FADEC were not accounted for and the crew was not protected from a single-point of failure in the FADEC and its components.

d.     Dangerous and defective systems integration that did not allow for an adequate backup system for the FADEC single channel, single point of failure with no redundancy.

e.     Dangerous and defective systems integration that did not allow the pilots to command adequate fuel supply from the FADEC for safe flight throughout the entire operating envelope of the FADEC and the engine.

f.     Dangerous and defective instructions because there was nothing to alert flight crew or maintenance personnel of the impending failures of the EMC-35 FADEC and its components, which were known only to defendants.

g.     Dangerous and defective operating instructions, operating limitations, operating procedures and emergency procedures for EMC-35 FADEC and its components.

h.     Dangerous and defective warnings about FADEC failures.

106.    As a direct and/or proximate result of the defects described, David Hortman's aircraft suffered a loss of engine power, a loss of engine control and a crash that took his life.

WHEREFORE, plaintiffs claim money damages.

### Count XII – Negligence (as to the FADEC defendants)

1. – 106.  Plaintiffs incorporate paragraphs 1-106 by reference.

107.    The defendants were negligent and that negligence was the direct and/or proximate cause of the death of David Hortman.

108.    The negligence of the defendants consisted of the following:

    a.  Failing to properly design the EMC-35 FADEC.

    b.  Failing to properly manufacture the EMC-35 FADEC.

    c.  Failing to properly integrate the systems of the EMC-35 FADEC because the known failure modes of the EMC-35 FADEC were not accounted for and the crew was not protected from a single-channel, single point of failure in the FADEC and its components.

    d.  Failing to properly integrate the systems of the EMC-35 FADEC because they did not allow for an appropriate backup system for FADEC single-channel, single point of failure with no redundancy.

    e.  Failing to properly integrate the systems of the EMC-35 FADEC because the FADEC did not allow the pilots to command an adequate fuel supply to the engine for safe flight throughout the entire operating envelope of the engine.

    f.  Failing to provide proper instructions because there was nothing to alert flight crew or maintenance personnel of the impending failures of the EMC-35 FADEC and its components, which were known only to defendants.

g.    Failing to provide proper operating instructions, operating limitations, operating procedures and emergency procedures for the EMC-35 FADEC and its components.

h.    Failing to provide proper warnings about FADEC failures.

i.    Failing to redesign the EMC-35 FADEC and its components to correct defects that were known to defendants, or should have been known to them.

j.    Failing to take all reasonable steps to provide the pilots with redundancy given the known history of EMC-35 FADEC defects.

k.    Failing to properly and adequately perform their contracts in good faith the protect those who pilot and fly in aircraft with the EMC-35 FADEC.

109.    As a direct and/or proximate result of the negligence of the defendants, David Hortman's aircraft suffered a loss of engine power, loss of engine control, and a crash that took his life.

WHEREFORE, plaintiffs claim money damages.

## Count XIII – Breach of Warranty (as to FADEC defendants)

1. – 109.  Plaintiffs incorporate paragraphs 1-109 by reference.

110.    There existed at the time of this accident certain warranties of fitness for a particular purpose and merchantability that were implied from the sale of the EMC-35

FADEC to the United States by these defendants regardless of any writing to eliminate them.

111.    The warranty of fitness for a particular purpose was breached by the defendants for the reasons set forth in Counts XI and XII because the EMC-35 FADEC was completely and wholly inadequate for the purpose intended, safe flight.

112.    The warranty of merchantability was breached by the defendants because the EMC-35 FADEC was not of fair or average quality of other engines made by competitors nor as it of the same quality as others manufactured by these defendants in that this one failed to function as required.

113.    The warranty of merchantability was breached by these defendants because the EMC-35 FADEC was not of fair or average quality of other FADECs or engine controls.

114.    As a direct result of the breaches of warranty by the defendants David Hortman lost his life.

WHEREFORE, plaintiffs claim money damages.

### Count XIV – Breach of Contract (as to FADEC defendants)

1. – 114.  Plaintiffs incorporate paragraphs 1-114 by reference.

115.    The United States Government entered into a performance-only contract with the defendants for the supply of an EMC-35 FADEC that allowed for fuel metering and engine control to Model 250 engine.

116.    The purpose of that contract was to provide the United States Army with a FADEC that would control the turbine engine so that it could provide power throughout the entire operating envelope of the aircraft.

117.    The requirements of the contract were performance-only requirements that did not specify the precise manner of construction.

118.    The design, manufacture, testing and systems integration of the FADEC was the responsibility of the defendants pursuant to the performance-only requirements of the contract.

119.    The entire objective of the contract was to provide an airworthy FADEC for use in the turbine engine for the benefit of the pilots, in this instance David Hortman.

120.    It was the objective, purpose and specific intention of the parties that the beneficiary of the contract was the pilots and the specific objective that they be equipped with a FADEC that would meter the fuel and control the engine that would provide, under all anticipatable flight conditions and in combat and in training, sufficient power and airworthiness so that the aircraft and the pilots would survive the flight and the fight.

121.    The defendants breached their contract for the creditor beneficiary, David Hortman, by failing to provide a FADEC that met the performance-only requirements of the contract.

122.    The defendants breached their contract for the creditor beneficiary, David Hortman, by failing to meet their obligations as set forth in Counts XI to XIII.

WHEREFORE, plaintiffs claim money damages.

### Count XV – Fraud (as to FADEC defendants)

1. – 122.  Plaintiffs incorporate paragraphs 1-122 by reference.

123.   The defendants knew, beginning at least in 2007, that the EMC-35 FADEC was unreasonably dangerous and prone to failure yet they knowingly concealed this information from the government and specifically from the Army.

124.   The defendants knew, by virtue of multiple previous failures of the EMC-35 FADEC and its components, that the FADEC was unreasonably dangerous and prone to failure yet the defendants knowingly concealed this information from the government and specifically from the Army.

125.   The defendants knew, by virtue of multiple previous failures of EMC-35 FADECs installed on other aircraft, that this system and its components were unreasonably dangerous, prone to failure, prone to single-point failure, and required adequate redundancy yet the defendants knowingly concealed this information from the government and specifically from the Army.

126.   In numerous meetings, conversations and communications with the government, and specifically with the Army, the defendants repeatedly failed to disclose the true nature of the flaws of EMC-35 FADEC and its components and, instead, falsely represented that the FADEC and its components would provide sufficient fuel metering and engine control throughout the engine's entire operating envelope and that the probability of failure would be remote or highly remote.

127.   The defendants charged the government millions of dollars for FADECs that could not and did not provide the pilots with the basic needs of safe flight.

128.   The defendants committed actual fraud on the United States Army and therefore its employee David Hortman by knowingly supplying an unreasonably dangerous and defective EMC-35 FADEC.

129.   The fraud of the defendants included but is not limited to the following by falsely:

a.   Representing that the EMC-35 FADEC would meet the performance requirements of the contract when these defendants knew the engine did not meet those requirements

b.   Representing that the EMC-35 FADEC met the reliability requirements of the contract when these defendants knew the engine did not meet those requirements.

c.   Representing that the EMC-35 FADEC met the system integration requirements of the contract when these defendants knew the engine did not meet those requirements.

d.   Representing that the EMC-35 FADEC would work to provide safe flight throughout the anticipated operating envelope when these defendants knew that these components would not work to provide for the safe flight.

e.   Representing that they had fixed or cured any defects in the EMC-35 FADEC when these defendants knew they had not.

f.   Representing that they had performed adequate testing and evaluation of the EMC-35 FADEC when these defendants knew they had not.

    g.      Representing that they had provided sufficient maintenance information to allow diagnostics and repair in the field when these defendants knew they had not.

    h.      Representing that they had provided appropriate warnings when these defendants knew they had not.

    i.      Representing that they had provided appropriate operating instructions, operating limitations, operating procedures and emergency procedures when these defendants knew they had not.

    j.      Representing that they had provided safe and reliable systems that would allow our fighting men and women to survive the fight when these defendants knew they had not.

    k.      Representing that they had in place an adequate and acceptable quality control system for the engine, its FADEC and its components when these defendants knew they had not.

    l.      Representing that they had properly manufactured the FADEC when they had not.

130.   As a direct result of the fraud and deceit of the defendants, plaintiffs demand punitive damages.

WHEREFORE, plaintiffs claim money damages.

THE PLAINTIFFS


By_____

James W. Walsh
Bennett Walsh    Juris #03262
PO Box 106
103 Main Street
Ansonia, CT 06401
(203) 735-3321

RETURN DATE: SEPTEMBER 11, 2012   :      SUPERIOR COURT
BRENDA JONES, AS                  :      JUDICIAL DISTRICT OF
CO-ADMINISTRATOR OF         :      HARTFORD
THE ESTATE OF                   :
JOHN DAVID HORTMAN,        :      AT HARTFORD
ET AL.                           :
                                :
vs.                           :
                                :
GOODRICH CORPORATION, ET AL.   :      AUGUST 8, 2012

## STATEMENT IN DEMAND

The amount, legal interest or property in demand, exclusive of interest and costs is

$2,500.00 or more.

**The Plaintiff**

By _____
    **James W. Walsh**
    Bennett & Walsh   Juris # 03262
    103 Main Street
    P.O. Box 106
    Ansonia, Connecticut 06401
    Telephone (203)735-3321

**APPEARANCE**
JD-CL-12 Rev. 1-12
P.B. §§ 3-1 thru 3-6, 3-8, 10-13, 25A-2

STATE OF CONNECTICUT
**SUPERIOR COURT**
www.jud.ct.gov

**Instructions** — *See Back/Page 2*

*Notice To Self-Represented Parties*
*A self-represented party is a person who represents himself or herself. If you are a self-represented party and you filed an appearance before and you have since changed your address, you must let the court and all attorneys and self-represented parties of record know that you have changed your address by checking the box below:*

☐ *I am filing this appearance to let the court and all attorneys and self-represented parties of record know that I have changed my address. My new address is below.*

| | |
|---|---|
| Return date | Sep-11-2012 |
| Docket number | HHD-CV-12-6035051-S |

**Name of case** *(Full name of Plaintiff vs. Full name of Defendant)*
JONES, BRENDA, CO-ADMINISTRATOR OF THE ESTATE OF J Et Al v. GOODRICH CORPORATION Et Al

| | | | | |
|---|---|---|---|---|
| ☒ Judicial District | ☐ Housing Session | ☐ Small Claims | ☐ Geographic Area number | Address of Court *(Number, street, town and zip code)* 95 WASHINGTON STREET HARTFORD, CT 06106 |

Scheduled Court date *(Criminal/Motor Vehicle Matters)*

## Please Enter the Appearance of

Name of self-represented party *(See "Notice to Self-Represented Parties" at top)*, or name of official, firm, professional corporation, or individual attorney

**MCCARTER & ENGLISH LLP**

Juris number of attorney or firm
**419091**

| Mailing Address *(Number, street)* *(Notice to attorneys and law firms - The address to which papers will be mailed from the court is the one registered or affiliated with your juris number. This address cannot be changed in this form.)* CITY PLACE I 185 ASYLUM AVE- 36TH FLR | Post office box | Telephone number *(Area code first)* 860.275.6703 |
|---|---|---|

| City/town HARTFORD | State CT | Zip code 06103 | Fax number *(Area code first)* 860.724.3397 | E-mail address dreif@mccarter.com |
|---|---|---|---|---|

in the case named above for: *("x" one of the following parties; if this is a Family Matters case, also indicate the scope of your appearance)*

☐ The Plaintiff *(includes the person suing another person).*
☐ All Plaintiffs.
☐ The following Plaintiff(s) only: _____
☐ The Defendant *(includes the person being sued or charged with a crime).*
☐ The Defendant for the purpose of the bail hearing only *(in criminal and motor vehicle cases only).*
☐ All Defendants.
☒ The following Defendant(s) only: Pty# D-05 THE BOEING COMPANY
☐ Other *(Specify):* _____
☐ This is a Family Matters case and my appearance is for: *("x" one or both)*
     ☐ matters in the Family Division of the Superior Court    ☐ Title IV-D Child Support matters

*Note: If other counsel or a self-represented party has already filed an appearance for the party or parties "x'd" above, put an "x" in box 1 or 2 below:*

1. ☐ This appearance is in place of the appearance of the following attorney, firm or self-represented party on file *(P.B. Sec. 3-8):* _____
                                                    *(Name and Juris Number)*

2. ☐ This appearance is in addition to an appearance already on file.

**I agree to accept papers (service) electronically in this case under Practice Book Section 10-13**   ☒ Yes   ☐ No

| Signed *(Individual attorney or self-represented party)* ▶ 049350 | Name of person signing at left *(Print or type)* DAVID REIF | Date signed Sep 06 2012 |
|---|---|---|

## Certification

I certify that a copy of this document was mailed or delivered electronically or non-electronically on *(date)* Sep 06 2012 to all attorneys and self-represented parties of record and that written consent for electronic delivery was received from all attorneys and self-represented parties receiving electronic delivery.

Name and address of each party and attorney that copy was mailed or delivered to*

**BENNETT & WALSH - 103 MAIN STREET/PO BOX 106/ANSONIA, CT 06401**

For Court Use Only

| Signed *(Signature of filer)* ▶ 049350 | Print or type name of person signing DAVID REIF | Date signed Sep 06 2012 | Telephone number 860.275.6703 |
|---|---|---|---|

*If necessary, attach an additional sheet or sheets with the name of each party and the address which the copy was mailed or delivered to.

STATE OF CONNECTICUT}
      } SS: HARTFORD,   AUGUST 8, 2012
COUNTY OF HARTFORD }

  Then and by virtue hereof on the 8th day of August, 2012, I made due and legal service on the within named Defendant, **GOODRICH CORPORATION**, by leaving a verified true and attested copy of the within original **Writ, Summons, Complaint and Amount In Demand,** with and in the hands of Shauntel McKoy, Special Assistant for Corporation Service Company, Agent For Service for said Defendant, at 50 Weston Street, in the City of Hartford.

  Also on the 8th day of August, 2012, I made due and legal service on the within named Defendant, **GOODRICH PUMP & ENGINE CONTROL SYSTEMS, INC.,** by leaving a verified true and attested copy of the within original **Writ, Summons, Complaint and Amount In Demand,** with and in the hands of Shauntel McKoy, Special Assistant for Corporation Service Company, Agent For Service for said Defendant, at 50 Weston Street, in the City of Hartford.

  Also on the 8th day of August, 2012, I made due and legal service on the within named Defendant, **ROLLS-ROYCE NORTH AMERICA, INC.,** by leaving a verified true and attested copy of the within original **Writ, Summons, Complaint and Amount In Demand,** with and in the hands of Shauntel McKoy, Special Assistant for Corporation Service Company, Agent For Service for said Defendant, at 50 Weston Street, in the City of Hartford.

  Also on the 8th day of August, 2012, I made due and legal service on the within named Defendant, **THE BOEING COMPANY,** by leaving a verified true and attested copy of the within original **Writ, Summons, Complaint and Amount In Demand,** with and in the hands of Shauntel McKoy, Special Assistant for Corporation Service Company, Agent For Service for said Defendant, at 50 Weston Street, in the City of Hartford.

  Afterwards on the 8th day of August, 2012 and by the direction of the plaintiff's attorney, I made due and legal service on the within named Defendant, **ROLLS-ROYCE CORPORATION** by depositing at the Post Office in Hartford, postage paid and certified, return receipt requested, a verified true and attested copy of the within original, **Writ, Summons, Complaint and Amount In Demand,** with my doings thereon endorsed, addressed to the within named Defendant, **Rolls-Royce Corporation,** C/o The Secretary, 2001 S. Tibbs Avenue, MDU27, Indianapolis, IN 46241. (C.G.S. 33-929)

Also on the 8th day of August, 2012 and by the direction of the plaintiff's attorney, I made due and legal service on the within named Defendant, **MD HELICOPTERS, INC.** by depositing at the Post Office in Hartford, postage paid and certified, return receipt requested, a verified true and attested copy of the within original, **Writ, Summons, Complaint and Amount In Demand,** with my doings thereon endorsed, addressed to the within named Defendant, **MD Helicopters, Inc.,** C/o The Secretary, 4555 East McDowell road, Mesa, Arizona 85219-9734 (C.G.S. 33-929)

SUPPLEMENTAL RETURN TO FOLLOW

The within is the original **Writ, Summons, Complaint and Amount In Demand,** with my doings hereon endorsed.

FEES:                                    ATTEST:

Pages        $ 258.00
Endorsements    7.60                     CHARLES J. LILLEY
Service        100.00                    STATE MARSHAL
Travel           2.00                    HARTFORD COUNTY
Postage         15.20

Total        $ 382.80

**RETURN DATE: SEPTEMBER 11, 2012**

BRENDA JONES as Co-Administrator of
   the Estate of John David Hortman, et al.

                                   SUPERIOR COURT
                                   J.D. OF HARTFORD
                                 AT HARTFORD

VS

GOODRICH CORPORATION, ET AL

<div align="center">SUPPLEMENTAL RETURN</div>

Afterwards I received the return receipt hereto annexed, (**MD Helicopters, Inc.,**)



ATTESTED:

CHARLES J. LILLEY
STATE MARSHAL
HARTFORD COUNTY

**RETURN DATE: SEPTEMBER 11, 2012**

BRENDA JONES as Co-Administrator of
the Estate of John David Hortman, et al.

SUPERIOR COURT
J.D. OF HARTFORD
AT HARTFORD

VS

GOODRICH CORPORATION, ET AL

SUPPLEMENTAL RETURN

Afterwards I received the return receipt hereto annexed, (**Rolls-Royce Corporation**)

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature X ☐ Agent ☐ Addressee B. Received by ( Printed Name) C. Date of Delivery |
| 1. Article Addressed to: Rolls-Royce Corporation C/o The Secretary 2001 S. Tibbs Ave. MD427 Indianapolis, IN 46241 | D. Is delivery address different from item 1? ☐ Yes If YES, enter delivery address below: ☐ No |
| | 3. Service Type ☒ Certified Mail ☐ Express Mail ☐ Registered ☐ Return Receipt for Merchandise ☐ Insured Mail ☐ C.O.D. 4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number (Transfer from service label) | 7011 2970 0000 6089 2057 |
| PS Form 3811, February 2004 | Domestic Return Receipt    102595-02-M-1540 |

ATTESTED:

CHARLES J. LILLEY
STATE MARSHAL
HARTFORD COUNTY