UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRENDA JONES, *as co-administrator of the estate of John David Hortman,* et al.,<br>    *Plaintiffs*,<br>    *v.*<br>GOODRICH CORPORATION, et al.,<br>    *Defendants*. | Civil No. 3:12cv1297 (JBA)<br><br>August 7, 2020 |

**RULING DENYING PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT**

Plaintiffs move to alter or amend the Memorandum of Decision on Defendants' Motion for Summary Judgment on the Issue of Implied Field Preemption [Doc. # 555]. (Pl.'s Mot. to Alter J. [Doc. # 559].) Defendants oppose. (Defs.' Opp. [Doc. # 564].) For the reasons that follow, Plaintiffs' motion is denied.

**I. Background**

The Court assumes the parties' familiarity with the underlying facts and procedural history of this case. Briefly, Plaintiffs allege that the helicopter crash which killed Captain Hortman and Chief Redd was caused by a failure of the helicopter's Full Authority Digital Electronic Control ("FADEC") computer. The Army required certain aspects of the helicopter—including the engine and any modifications to the FADEC—to comply with Federal Aviation Authority ("FAA") requirements.

Shortly before his death, Judge Warren W. Eginton, to whom this case was assigned throughout its approximately seven-year litigation process, issued an order granting summary judgment to Defendants. (Mem. of Dec. [Doc. # 555].) In applying the test for implied preemption set out by the Second Circuit Court of Appeals in *Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses Com'n,* 634 F.3d 206 (2d Cir. 2011), and *Tweed-New Haven Airport Authority v. Tong*, 930 F.3d 65 (2d Cir. 2019), Judge Eginton concluded that Plaintiffs' state law claims were preempted by federal law. (*Id.*)

Upon Judge Eginton's passing, this action was transferred to this Court, and judgment entered in favor of Defendants. [Judgment [Doc. # 558].) Plaintiffs now move this Court to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). (Pl.'s Mot. to Alter J. at 2.)

## II. Discussion

Federal Rule of Civil Procedure 59(e) permits a "motion to alter or amend a judgment" within "28 days after the entry of the judgment." Under Rule 59, "district courts may alter or amend judgment to correct a clear error of law or prevent manifest injustice." *Munafo v. Metro. Trans. Auth.*, 381 F.3d 99, 105 (2d. Cir. 2004) (internal quotation omitted). Rule 59 "gives a district court the chance to rectify its own mistakes in the period immediately following its decision." *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (internal quotation omitted). A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008). "While a motion for reconsideration under Fed. R. Civ. P. 59(e) does not properly serve as an occasion to repeat already-defeated arguments, in deciding such a motion a district court still may reconsider a hastily-made earlier ruling if, upon revisiting the non-prevailing party's arguments, the court concludes that it erred." *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 217 (2d Cir. 2019). However, the standard for granting such a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

Moreover, reconsideration is particularly improper where the moving party "attempt[s] to relitigate" before a newly assigned judge any "arguments rejected or ruled irrelevant" by the prior judge. *Dandong v. Pinnacle Perf. Ltd.*, 2012 WL 6217646, at *2

(S.D.N.Y. Dec. 3, 2012). "Put simply, case reassignment does not put settled issues back into play. If it did, the result would be increased uncertainty and needless depletion of judicial resources." *Id.*; *see also Waverly Props., LLC v. KMG Waverly*, 2011 WL 13322667, at *1 (S.D.N.Y. Dec. 19, 2011) ("It appears to this Court that [the moving parties] are seizing, conveniently, on the possibility that this judge, to whom this matter was reassigned within a week of [the prior judge's] order, may view their summary judgment arguments in a more favorable light . . . . A reassignment, however, does not itself supply a persuasive basis to revisit the prior rulings in a case."). Thus, "[w]here a motion to reargue is brought before a judge different than the one who made the original decision, the new judge should accord the first ruling great respect." *Bensen v. Am. Ultramar Ltd.*, 1996 WL 490702, at *3 n.5 (S.D.N.Y. Aug. 28, 1996) (citing *Dictograph Prods. Co. v. Sonotone Corp.*, 239 F.2d 131, 134 (2d Cir. 1956)).

Plaintiffs urge this Court to reconsider Judge Eginton's summary judgment ruling, arguing that ruling "made four clear legal errors." (Mot. to Alter J. at 2.) Specifically, Plaintiffs argue that the prior ruling erred by: 1) holding "that the preempted field of aviation safety includes product liability claims relating to design defects"; 2) holding "that preemption required the elimination of all liability, as opposed to the substitution of federal standards of care for state ones"; 3) holding "that preemption extends to manufacturing defect claims"; and 4) "inappropriately reach[ing] the question of field preemption." (*Id.* at 2-3.) The Court will address each argument in turn.

Defendants argue that Plaintiffs "now seek a second bite at the apple and a chance to re-litigate maters decided by Judge Eginton" but "fail[] to meet the strict standards necessary for reconsideration" and "do[] not identify any controlling authority overlooked by Judge Eginton." (Defs.' Opp. at 1.)

### A. Preemption of Design Defect Claims

First, Plaintiffs assert that Judge Eginton erred in concluding "that the preempted field of air safety includes aviation design defect claims, including design defects that cause crashes." (*Id.* at 3.) Plaintiffs argue that "[c]ontrary to the reasoning in the Memorandum, Second Circuit precedent does not compel this conclusion—and in fact every court of appeals that has considered the question has come out the other way." (*Id.*) In support of this argument, Plaintiffs cite congressional intent in passing the Federal Aviation Act and regarding tort liability and the Act's use of the term "minimum standards." (*Id.* at 3-5.)

Plaintiffs also assert that the Second Circuit's decisions upon which Judge Eginton's Memorandum relied heavily actually do not support the Memorandum's conclusion because "[t]he Court overread those decisions." (*Id.* at 5.) First, Plaintiffs argue that it was "quite odd" to rely on *Goodspeed* to find that Plaintiffs' claims are preempted because *Goodspeed* itself "concluded that there was *no preemption*" in that case. (*Id.* at 6.) Plaintiffs also suggest that Judge Eginton overread *Goodspeed*'s declaration that "the entire field of air safety" is preempted by federal law, 634 F.3d at 208, because *Goodspeed* "*never* held that product liability claims are preempted, or even considered such claims." (Mot. to Alter J. at 6.) Thus, Plaintiffs argue, Judge Eginton erred in concluding that product liability claims are preempted.

Next, Plaintffs argue that Judge Eginton also misread *Tweed*, which "does not deal with product liability claims against aviation manufacturers," when he concluded that *Tweed* supported a finding of preemption in this case. (*Id.* at 7.) Finally, Plaintiffs assert that Judge Eginton's reliance on *Fawemimo v. Am. Airlines, Inc.*, 751 F. App'x 16 (2d Cir. 2018), was misplaced because it was "a non-precedential, unpublished decision, and for good reason." (Mot. to Alter J. at 8.)

In support of their contention that *Goodspeed, Tweed,* and *Fawemimo* do not support the Memorandum's conclusion that Plaintiffs' claims are preempted by federal law, Plaintiffs

4

cite decisions by "other appellate courts that have considered" whether design defect claims are preempted, "all of" which "have come out against preemption." (*Id.*) Plaintiffs rely most heavily on *Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680 (3d Cir. 2016), *cert. denied sub nom. Avco Corp. v. Sikkelee*, 140 S. Ct. 860 (2020), which held that state law products liability claims were not preempted by federal law on aviation safety. Plaintiffs describe the *Sikkelee* opinion as "searching" and "scholarly," suggesting that its conclusion on this question was correct. (Mot. to Alter J. at 9.) Thus, Plaintiffs conclude, "[t]he Memorandum clearly erred by concluding" that Plaintiffs' design defect claims are preempted. (*Id.*)

Defendants describe Plaintiffs' arguments as "a rehash of their summary judgment briefs," (Defs.' Opp. at 11), which also argued that "[t]here is no Second Circuit case law deciding that implied preemption applies to state law product liability claims," (Pls.' Br. Re Implied Field Preemption [Doc. # 546] at 4.) Defendants note that "Plaintiffs do not argue that Judge Eginton ignored Second Circuit precedent; instead, they suggest that he applied Second Circuit precedent to new facts in a different manner than some courts outside of the Second Circuit would have done." (Defs.' Opp. at 8.) According to Defendants, "Plaintiffs' argument that a ruling on an issue allegedly of first impression [in this Circuit] could be clear error turns the standards for reconsideration upside down because a disagreement over the interpretation of case law is different than overlooking that authority entirely." (*Id.* at 9.)

In reviewing the Memorandum's reasoning, the arguments Plaintiffs advanced before Judge Eginton, and the substance of Plaintiffs' arguments on reconsideration, the Court agrees that Plaintiffs have not demonstrated that the Memorandum's decision regarding preemption of state law design defect claims was "clear error." Plaintiffs plainly disagree with Judge Eginton's reasoning regarding the application of *Goodspeed* and *Tweed* to this issue, which neither case directly addressed. But upon a thorough review of those cases and the Memorandum, the Court disagrees with the suggestion that Judge Eginton's conclusion was "clear error." The Memorandum reveals no misreading or plainly incorrect

5

interpretation of those cases. Rather, Plaintiffs disagree with Judge Eginton's conclusion, suggesting that he should have joined the Third Circuit and others who have reached the opposite conclusion. But Plaintiffs offer no new evidence or caselaw to support their request for reconsideration, instead apparently hoping that this Court will be more persuaded by their arguments than was Judge Eginton. Plaintiffs have not carried their heavy burden to demonstrate that reconsideration is warranted on this issue, and they may advance these arguments on appeal.

### B. Substitution of Standards of Care

Plaintiffs argue that the Memorandum erred in granting summary judgment because even if state law design defect claims are preempted, "it is well-established that to the extent aviation field preemption applied to tort claims, federal law only preempted state standards of care—not all liability." (Mot. to Alter J. at 11.) Thus, Plaintiffs argue, the Memorandum "erred by leaping from the premise that the field was preempted to the conclusion that summary judgment was appropriate." (*Id.*)

In support of their request that this Court reconsider the Memorandum's conclusion, Plaintiffs assert that "[t]o the best of our knowledge, no court has ever held that implied field preemption relating to aviation safety extinguishes all state tort liability." (*Id.*) Plaintiffs cite one case from this Court, *Aldana v. Air East Airways, Inc.*, 477 F. Supp. 2d 489, 493 (D. Conn. 2007), which held that "common law negligence standards are preempted by the [Federal Aviation Act], under the Act's 'savings clause,' the plaintiffs right to pursue their negligence claims (applying FAA standards) against defendants is not." Thus, the Court held in that case, "if plaintiffs prove that defendants' negligent acts and omissions measured by FAA standards caused their injuries, then they will be entitled to pursue the breadth of common law remedies available under Connecticut Law." *Id.*

Plaintiffs also cite the FAA's position in *Sikelee*, where the FAA acknowledged that preemption would "not necessarily mean that a state tort suit based on those federal standards is preempted." (Mot. to Alter J. at 12.)

Plaintiffs assert that Judge Eginton should have adopted a similar approach and that it was "clear error" for him not to do so. But again, Plaintiffs' arguments amount only to a disagreement with Judge Eginton's reasoning and conclusion. They cite no binding authority which conflicts with his conclusion, again apparently hoping that this Court would have reached a different conclusion and will thus amend the judgment. But in the absence of any argument or authority to suggest that Judge Eginton's conclusion on this point was clearly erroneous or overlooked any controlling decision, the Court will not second guess that conclusion on a motion to reconsider.

### C. Manufacturing Defect Claims

Plaintiffs argue that "the Memorandum clearly erred by extending its field preemption holding [on design defect claims] to manufacturing claims." (Mot. to Alter J. at 12.) Plaintiffs explain that "[a]ssuming *arguendo* that federal standards displace state ones vis-à-vis product design, there is no good reason for holding that a manufacturer is free to violate those standards in its manufacturing process . . . and escape all liability." (*Id.* at 12-13.) In support of that position, Plaintiffs assert that "[t]o the best of our knowledge, no court has previously held that a manufacturing defect claim fails due to field preemption—and the Memorandum cites no authority to that effect." (*Id.* at 13.) Plaintiffs argue that the Memorandum's decision is "conclusory and inconsistent with the summary judgment record" and improperly applies Georgia law to this fact pattern. (*Id.* at 13, 15.)

But again, Plaintiffs have failed to demonstrate that the Memorandum's conclusion was clear error or otherwise merits reconsideration by this Court. Plaintiffs' own arguments make clear that reconsideration is improper. Instead of citing authority with which Judge Eginton's decision conflicts or which he overlooked, Plaintiffs urge this Court to amend the

7

judgment because "there is no good reason for" Judge Eginton to have held as he did and because "no court has previously [so] held." But in the absence of any argument or authority which demonstrates that the Memorandum's holding was "clear error," Plaintiffs have not met the "strict" standard for reconsideration.

### D. Reaching the Question of Field Preemption

Finally, Plaintiffs argue that the Memorandum was procedurally improper because "the Court should not have *sua sponte* ordered the parties to address field preemption" and should not have "reach[ed] out and decide[d] *only* the field preemption question." (Mot. to Alter J. at 16.) Plaintiffs assert that Judge Eginton erred by requesting briefing on the question of field preemption because "[i]t was improper for the Court to ignore the parties' summary judgment briefing and interject itself into the dispute by ordering defendants to seek summary judgment on a ground they had disclaimed." (*Id.*) And Plaintiffs suggest that he erred by basing his decision on field preemption because it is a "constitutional argument" which should not have been addressed if the case could have been resolved "on other grounds." (*Id.* (quoting *Torres v. Precision Indus., Inc.*, 938 F.3d 752, 755 (6th Cir. 2019)).)

As to Judge Eginton's *sua sponte* request for briefing on field preemption, Defendants respond that Plaintiffs are "improperly seek[ing] to use their motion for reconsideration as an opportunity to present new theories of the case and seek new legal relief." (Defs.' Opp. at 13.) According to Defendants, "[i]f Plaintiffs had an objection to" the Court's request for briefing on field preemption, "they had ample opportunity to object at the time" Judge Eginton made that request. (*Id.* at 15.)

Plaintiffs explain their failure to object at that time by claiming that they "had no reason to think the court was going to grant summary judgment on field preemption grounds, as defendants had disclaimed that contention, and it was at odds with precedent." (Reply Supp. Mot. to Alter J. [Doc. # 565] at 9.) But Judge Eginton explicitly requested briefing on "the issue of implied preemption of state air safety law in the Second Circuit," specified

8

questions regarding the impact of preemption on Plaintiffs' claims including whether the court could "permit the trial of plaintiffs' claims," and "deferred" "[d]ecision on defendants' other dispositive motions . . . until the issue of implied field preemption is resolved." (Sched. Order [Doc. # 542] at 3.) Therefore, Plaintiffs' suggestion that they should be permitted to use a motion for reconsideration to advance new arguments because they did not expect the court to grant summary judgment on preemption grounds is unconvincing.

As to Plaintiffs' argument that field preemption should not have formed the basis of the Memorandum's conclusion, Defendants argue that "[e]ven if Plaintiffs were correct that their new argument" regarding the propriety of reaching preemption questions where the case could be resolved on other grounds "is supported by 'well settled' law, which it is not, then they should have raised that argument in their summary judgment briefs." (Defs.' Opp. at 16.) Defendants also note that "other pending summary judgment motions (related to the government contractor defense and conflict preemption) also addressed constitutional questions related to preemption, so it would be illogical to say that field preemption must be considered after the other preemption arguments." (*Id.*)

To explain their failure to advance this argument previously, Plaintiffs again assert that "nobody knew that the court was going to ignore all of the other defenses in the case, so this argument could not have been raised earlier." (Reply at 10.) But especially in light of Judge Eginton's clear indication that "[d]ecision on defendants' other dispositive motions will be deferred until the issue of implied field preemption is resolved," (Sched. Order at 3), Plaintiffs' suggestion that "nobody knew" that the Court would address the issue of field preemption first is unconvincing.

Plaintiffs may not use their Rule 59(e) motion to "raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co.*, 554 U.S. at 485 n.5. In the absence of any meritorious explanation of their failure to raise these arguments before Judge Eginton, the Court will not consider them now.

### III. Conclusion

For the foregoing reasons, Plaintiffs' Motion to Alter or Amend the Judgment [Doc. # 559] is DENIED.

                                          IT IS SO ORDERED.

                                          /s/
                                        Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 7th day of August 2020.